IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LOUIS AKOP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:04-CV-2058-D |
| VS. | § | |
| | § | |
| GOODY GOODY LIQUOR, INC., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this lawsuit by a terminated employee alleging discrimination based on age and religion and retaliation for filing complaints of discrimination, defendant moves for summary judgment. For the reasons that follow, the court grants the motion and dismisses the case.

I

Plaintiff Louis Akop ("Akop") sues his former employer, defendant Goody Goody Liquor, Inc. ("GGLI"), alleging that it discharged him because of his age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634, and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Labor Code Ann. §§ 21.001-21.556 (Vernon 1996 & Supp. 2005); that it discharged him based on his religion, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; and that it terminated him in retaliation for complaining about discrimination, in violation of Title VII and the

ADEA.[1]

In 1999 GGLI hired Akop, then age 63, as a wholesale salesperson to sell liquor, wine, and bar supplies to restaurants.[2] GGLI compensated him based solely on commissions. In or about April 2000 Akop disclosed to his supervisor, Scott Noebel ("Noebel"), that he is Jewish. Noebel supervised Akop from 2000 until early 2003. Ken Bill ("Bill") supervised Akop from then until his termination in November 2003.[3]

In early March 2003 Akop complained that GGLI had not notified him of changes in the cutoff time for Saturday deliveries (presumably to his various wholesale accounts). Noebel responded that Akop must have Alzheimer's disease. Akop contends that Noebel once called him a "kike," and that Noebel stated sometime during 2001 or 2002 that he did not believe the Holocaust had ever happened.

In June 2003 Bill implemented a new sales structure whereby all salespersons were compensated according to a guaranteed salary

---

[1]As the court explains *infra* at § IV(C), Akop's claims are based on his termination; he does not rely on other grounds to allege that GGLI discriminated or retaliated against him.

[2]The court recounts the evidence in a light favorable to Akop as the summary judgment nonmovant and draws all reasonable inferences in his favor. *See, e.g.*, *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000).

[3]Roger Hanna ("Hanna") supervised Akop from February 1999 until early 2000. Akop does not complain about his treatment by Hanna.

of approximately $40,000 per year plus commissions for sales earned above that amount.  As part of the new structure, some salespersons, including Akop, were required to attend pre-call planning meetings and prepare worksheets for management that set out what the salesperson had done the prior day and planned to do that or the following day.  They were also required to create a written competitive price analysis that compared the price of GGLI's products to its competitors' and to present this analysis to customers.  The new structure also reorganized the sales territories among the salespersons.

In July 2003 GGLI gave Akop the first of three disciplinary warnings related to his job performance.  The warning recited, *inter alia*, that he had failed to follow the new sales structure. The following month Akop complained that Bill had stated, in reference to Akop, that he did not want employees working at GGLI who were "semi-retired."  In September 2003 GGLI gave Akop his second disciplinary warning for arriving late to a pre-call planning meeting.  GGLI also warned Akop that "[a]ny sales person who does not make [pre-call planning] part of his or her daily routine will not work for [GGLI]."  Later that month Akop filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discriminatory treatment based on his age and religion, and retaliation.  Akop had previously complained to the EEOC in February 2003 that GGLI had discriminated against

him in October 2002 by taking away some of his accounts.

In October 2003 Akop requested of Noebel that he be allowed to take off work on Yom Kippur.  He was informed that he could take the day off, provided he used a paid vacation day.  GGLI granted all employees three paid holidays per year: Thanksgiving, Christmas, and New Year's Day, which, according to GGLI, coincides with the days that liquor stores are prohibited under Texas law from opening.  Akop alleges that Noebel then asked Akop if he really went to temple.

On October 9, 2003 Akop's car was vandalized while parked near GGLI.  Written on the vehicle were the words "Die Jew Die," and someone had painted swastikas on the automobile.  No one was charged in the incident nor were any viable leads developed in the case.

Also in October 2003 GGLI gave Akop his third disciplinary warning for, *inter alia*, continuing to disregard the pre-call planning requirements and based on hygiene-related issues. Previously that month, Bill had allegedly received a call from the manager of Luna De Noche restaurant, a GGLI client, requesting that Akop be removed from its account because of his offensive body odor.  There is also evidence in the record that the Luna De Noche account had been eliminated from Akop's territory as of July 2003 (i.e., before the call).

GGLI terminated Akop on November 6, 2003, citing no

- 4 -

improvement in his pre-call planning, his written presentations to customers, and his hygiene.   On December 2, 2003 Akop filed a charge of discrimination with the EEOC, alleging that GGLI had discharged him because of his September 2003 EEOC charge.   He later filed this lawsuit.   GGLI now moves for summary judgment.

II

GGLI moves for summary judgment as to Akop's claim under the ADEA and TCHRA for age discrimination and claim under Title VII for discrimination based on religion.   The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."   29 U.S.C. § 623(a)(1).   The TCHRA provides that an "unlawful employment practice is established when the complainant demonstrates that . . . age . . . was a motivating factor for an employment practice."   Tex. Lab. Code Ann. § 21.125(a) (Vernon 1996 & Supp. 2005).   Texas state courts construe the TCHRA consistently with federal law interpreting the ADEA. *See, e.g., Badilla v. Bombardier Aerospace Corp.*, 2003 WL 23017671, at *2 (N.D. Tex. Dec. 18, 2003) (Fitzwater, J.).   Title VII makes it unlawful for an employer to discriminate against an employee on the basis of his religion.   *See* 42 U.S.C. § 2000e-2(a)(1).

To prove his discrimination claims against GGLI, Akop may rely on direct or circumstantial evidence.   *See, e.g., Machinchick v. PB*

*Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005) (addressing age discrimination) ("We have traditionally bifurcated ADEA cases into distinct groups: those in which the plaintiff relies upon direct evidence to establish his case of age discrimination, and those in which the plaintiff relies upon purely circumstantial evidence."). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). Such evidence of discrimination, however, is rare. *See, e.g., Rutherford v. Harris County, Tex.*, 197 F.3d 173, 180 n.4 (5th Cir. 1999) (Fitzwater, J.) (stating that because direct evidence is rare in discrimination case, plaintiff must ordinarily use circumstantial evidence to satisfy her burden of persuasion). If direct evidence is unavailable, the plaintiff may create an inference of discrimination by using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McDonnell Douglas* applies to ADEA and Title VII discrimination claims when they are based on circumstantial evidence. *See, e.g., West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 (5th Cir. 2003) (Fitzwater, J.) (age discrimination under ADEA ); *Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (Title VII claim). *McDonnell Douglas* likewise applies to TCHRA claims for age discrimination. *See Badilla*, 2003 WL 23017671, at *2-*3 (holding, *inter alia*, that Texas state courts construe the TCHRA consistently

with federal law interpreting the ADEA and applying *McDonnell Douglas* burden shifting paradigm).

### III

The court considers first whether Akop has proffered direct evidence of age or religion discrimination, i.e., evidence that, if believed, proves the fact of discriminatory animus without inference or presumption. "Such evidence typically involves statements made by the employer or certain of its personnel that indicate that an employment decision was based on a forbidden factor." *Bowe v. Exide Corp.*, 2001 WL 705881, at *3 n.1 (N.D. Tex. 2001) (Fitzwater, J.).

Akop does not clearly assert that the summary judgment record contains direct evidence either of age or religion discrimination. Rather, Akop divides his brief into three sections by claim, i.e., age discrimination, religion discrimination, and retaliation. Within each section, Akop relies on bullet-point lists of "disputed facts" that appear to relate generally to the theme of the claim. With respect to his two discrimination claims, he merely lists several age-related and religion-related remarks that his supervisors made. GGLI construes these "disputed facts" as Akop's assertion that he possesses direct evidence of discrimination. Although Akop does not make this contention, the court will nevertheless review the remarks to determine whether they constitute direct evidence.

The evidence of discrimination related to Akop's age is Noebel's comment that Akop "must have Alzheimer's disease" and that Bill did not want semi-retired personnel working at GGLI. Concerning Akop's Jewish religion, his proof is Noebel's alleged derogatory reference to him as a "kike" and Noebel's alleged opinion that the Holocaust never happened. As a threshold matter, the court notes that Akop has violated N.D. Tex. Civ. R. 56.5(c) by failing to cite the pages of the appendix on which he relies for these factual allegations. *See* Rule 56.5(c) ("A party whose . . . response is accompanied by an appendix must include in its brief citations to each page of the appendix that supports each assertion that the party makes concerning the summary judgment evidence."). Rather, he points to numbered tabs, most of which consist of numerous pages.[4]  Even considering this improperly cited proof,

---

[4]Akop's practice of citing broadly to tabs rather than to specific appendix pages permeates his brief.  Throughout his response, Akop cites the summary judgment evidence by referring to the tabs that mostly contain multiple pages.  At one point, Akop points to his entire 137-page appendix for evidence that he contends precludes summary judgment.  *See* P. Br. 3 ("Material disputed facts appear in the deposition, affidavits and documents included in Plaintiff's Appendix, which are incorporated herein by reference.").  These citations are inadequate under Rule 56.5(c) because they do not refer the court to a specific page of Akop's appendix.  "This inadequacy dramatically increases the burden on the court to locate the evidence on which [Akop] relies in opposing summary judgment, especially when [ ]he cites the court to exhibits that consist of several pages of testimony." *Hagen v. Beauticontrol Cosmetics, Inc.*, 1999 WL 451228, at *4 n.2 (N.D. Tex. June 28, 1999) (Fitzwater, J.).  Despite Akop's failure to comply with Rule 56.5(c), the court has attempted to locate the specific pages of the appendix that contain the evidence on which he relies.

however, the remarks do not constitute direct evidence of discrimination.

The first comment——that Akop must have Alzheimer's disease—— occurred eight months before his termination and was not proximate in time to the employment decision at issue.  The second——that Bill did not want semi-retired personnel working at GGLI——requires that an inference of discriminatory animus be drawn from the reference to "semi-retired personnel."  The third, in which Noebel allegedly called Akop a "kike," is undoubtedly highly offensive.  But absent evidence of when the comment was made or that it was somehow related to GGLI's decision to discharge Akop, it can only be characterized as a stray remark.[5]  The fourth is not direct evidence of discrimination because it would require that the trier of fact infer that Noebel's alleged belief that the Holocaust never occurred is probative of a discriminatory animus against persons of the Jewish faith.  Such an inference may in fact be reasonable. But "[e]ven if such an inference were reasonable, it is nonetheless a necessary one if the statement is to be accepted as evidence of discriminatory intent."  *Read v. BT Alex. Brown Inc.*, 72 Fed. Appx. 112, 119 (5th Cir. 2003) (unpublished opinion).  The court thus concludes that Akop has not introduced direct evidence of

---

[5]Furthermore, Akop failed to mention Noebel's use of the remark in response to the question posed at his deposition: was "there any other statement [Noebel] made to you that was derogatory regarding your Jewish religion?"  *See* P. App. Ex. 1 at 19.

discrimination based on age or religion.

Akop also lists as a "disputed fact" that, soon after he filed his EEOC charge, his car was defaced with swastikas and the words "Die Jew Die" while the vehicle was parked in the GGLI lot.  This does not constitute direct evidence of discrimination because Akop has failed to produce proof that GGLI or any of its employees was responsible for this disgusting conduct.  Moreover, GGLI has submitted the police report as evidence, and it indicates there were no viable leads in the case.  Because of the lack of proof linking this conduct to GGLI, it cannot constitute direct evidence of discrimination based on Akop's religion.

IV

Because Akop has not introduced direct evidence of discrimination based on age or religion, the court will apply the modified *McDonnell Douglas* framework[6] to his claims that GGLI discriminated against him.

A

As did the plaintiff in *Martin v. El Nell Inc.*, 2005 WL 2148651 (N.D. Tex. Sept. 7, 2005) (Fitzwater, J.), Akop maintains that all or part of *McDonnell Douglas* has been replaced by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), and that it is now "more

---

[6]In *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004), the Fifth Circuit modified the *McDonnell Douglas* burden-shifting paradigm.  *See Martin v. El Nell Inc.*, 2005 WL 2148651, at *2 (N.D. Tex. Sept. 7, 2005) (Fitzwater, J.).

difficult" for defendants to obtain summary judgment.  P. Br. 16.
Akop "spends much of [his] brief urging the court to reject the
application of the *McDonnell Douglas* framework to [his] case,
apparently asking that it apply the mixed-motive framework of *Price
Waterhouse v. Hopkins*, 490 U.S. 228 (1989) (plurality opinion),
because it is a much simpler approach." *Martin*, 2005 WL 2146851, at
*2 (internal quotation marks omitted).  Instead, as in *Martin*, the
court will follow *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305
(5th Cir. 2004) (age discrimination case).  *See Martin*, 2005 WL
2146851, at *2; *see also Keelan v. Majesco Software, Inc.*, 407 F.3d
332, 340-41 (5th Cir. 2005) (holding that "*Desert Palace* had no
effect on pretext cases under *McDonnell Douglas*.").[7]

---

[7]The three attorneys listed as counsel for Akop on his summary
judgment response brief were also listed as counsel for the
plaintiff in *Martin*.  The brief Akop has filed conducts an analysis
of the current state of federal civil rights case law in the Fifth
Circuit that consists of approximately 20 paragraphs and that is
nearly identical to the brief filed in *Martin*.  It is troubling
that neither the *Martin* nor the instant brief cites the apparent
author of this analysis.  *See* Durwood D. Crawford, *Proving
Employment Discrimination—A Light From The 5th Circuit*, for the
Dallas   Bar   Association   (Oct.   18,   2004)
http://www.thompsoncoe.com/portals/0/ProvingEmploymentDiscriminat
i o n . p d f ,   a n d   *a v a i l a b l e   a t*
http://www.gucl.com/CM/FirmArticles/Durwood.pdf. Moreover, even if
the apparent source of this analysis had been cited in *Martin* or in
this case, in *Keelan* the Fifth Circuit rejected the author's
contentions in that case (which are like those in the article)
concerning the impact of *Desert Palace* on *McDonnell Douglas*.  *See*
*Keelan*, 407 F.3d at 340-41.

- 11 -

B

The modified *McDonnell Douglas* framework consists of three stages. Akop must first establish a prima facie case of age or religion discrimination. *Machinchick*, 398 F.3d at 350. If he does, this "creates a presumption that [GGLI] unlawfully discriminated against [him]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden of production shifts to GGLI to proffer "a legitimate nondiscriminatory reason for its employment action." *Machinchick*, 398 F.3d at 350. GGLI's burden "is one of production, not proof, and involves no credibility assessments." *Martin*, 2005 WL 2148651, at *2. "[A]lthough the presumption of discrimination drops out of the picture once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima face case and inferences properly drawn therefrom on the issue of whether the defendant's explanation is pretextual[.]" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citations, internal quotation marks, and ellipsis omitted). If GGLI meets its production burden, then Akop "may proceed under one of two alternatives: the pretext alternative or the mixed-motives alternative." *Martin*, 2005 WL 2148651, at *2. Under the pretext alternative, Akop must "offer sufficient evidence to create a genuine issue of material fact . . . that [GGLI's] reason is not true, but is instead a pretext for discrimination." *Id.* (internal

quotation marks and ellipsis omitted).  Under the mixed motives alternative, Akop must "offer sufficient evidence to create a genuine issue of material fact that [GGLI's] reason, while true, is only one of the reasons for its conduct, and another motivating factor is [Akop's] protected characteristic."  *Id.* (internal quotation marks omitted).

C

As noted *supra* at § III, Akop fails to articulate his claims within the *McDonnell Douglas* burden-shifting framework and instead lists bullet points that he characterizes as "disputed facts." This briefing method has made it difficult for the court to comprehend the bases on which he opposes summary judgment.  For example, it is unclear what constitutes GGLI's alleged adverse employment action or actions.  To apply *McDonnell Douglas* the court must first ascertain whether Akop complains of disparate impact, disparate treatment, hostile work environment, and/or discriminatory discharge.

In his brief, Akop first mentions the term "disparate impact." He contends that he "suffered economically" and that he "fell to the lowest compensated salesperson" when GGLI converted from a pure commission to a mixed salary/commission compensation plan.  Akop cites *Smith v. City of Jackson*, ___ U.S. ___, 125 S.Ct. 1536 (2005), for the premise that GGLI's adoption of a compensation plan that replaced commissions with fixed salaries and reduced Akop from

being the first or second most highly paid salesperson to the lowest is actionable under the ADEA for its adverse disparate impact.  In his complaint, however, he does not allege a disparate impact theory or maintain that GGLI utilized a practice or policy that had an adverse impact on employees of a particular age.  To establish a prima facie case of disparate impact discrimination, Akop must demonstrate that GGLI's facially neutral employment standards operated more harshly on persons of a particular group rather than another.  *See Johnson v. Uncle Ben's, Inc.,* 965 F.2d 1363, 1367 (5th Cir. 1992).  This initial burden includes "proof of a specific practice or set of practices resulting in a significant disparity between" the groups.  *Id.*  Akop only alleges in his complaint and brief that the compensation change adversely affected his individual earnings relative to all other salespersons.  He fails to explain either in his complaint or in his brief how the conversion related at all to age.  Accordingly, he has not alleged an age-based disparate impact claim concerning the salary plan.

Akop lists additional "disputed facts" in his brief apart from his discharge and his disparate impact assertion, but he fails to explain how the facts support an age or religion discrimination claim.  For instance, he complains generally that Noebel treated him "in a manner different" and "in a different way" than non-Jewish peers and, specifically, that GGLI denied his request to take off Yom Kippur as a religious holiday.  He also cites the

respective stray remarks discussed *supra* at § III.  His assertion
as to different treatment is merely a conclusory statement about
his own subjective belief of discrimination, which is insufficient
to withstand summary judgment.  *See Lawrence v. Univ. of Tex. Med.
Branch*, 163 F.3d 309, 313 (5th Cir. 1999) (per curiam) ("[A]
subjective belief of discrimination, however genuine, [may not] be
the basis of judicial relief.") (internal quotation marks omitted
and second alteration in original); *Ray v. Tandem Computers, Inc*.,
63 F.3d 429, 435 (5th Cir. 1995) ("[B]ald assertions of . . .
discrimination are inadequate to permit a finding that proscribed
discrimination motivated [the defendant's] actions against [the
plaintiff].").  Concerning Noebel's decision that Akop could not
take off Yom Kippur as a paid holiday, he does not sufficiently
explain whether this "disputed fact" is offered as supporting
evidence that he was discharged because of his religious beliefs or
that this decision of itself constitutes a separate adverse
employment action that supports a discrimination claim.  Akop does
not address the elements of a prima facie claim of discrimination
with respect to the holiday denial.  He does not hint or suggest
that GGLI denied him a reasonable accommodation for his religious
beliefs, i.e., to take Yom Kippur as a paid holiday rather than as
a paid vacation day.  *See, e.g., Favero v. Huntsville Indep. Sch.
Dist.*, 939 F. Supp. 1281, 1286 (S.D. Tex. 1996) (describing
religion discrimination claim in which plaintiff asserted denial of

reasonable accommodation).   He does not maintain that the paid holiday denial resulted in disparate treatment. *See, e.g., Barrow v. Greenville Indep. Sch. Dist.*, 2002 WL 628665, at *6–*8 (N.D. Tex. Apr. 18, 2002) (Fitzwater, J.) (describing religion discrimination claim in which plaintiff asserted disparate treatment).   Even when the court construes his complaint and briefing liberally, it is apparent that Akop offers evidence of the denial of the holiday request to support his discriminatory discharge claim and not as an independent ground for relief.   Akop has therefore failed to state an actionable discrimination claim based on GGLI's refusal to allow him to take Yom Kippur as a paid holiday rather than as a paid vacation day.   Finally, Akop does not allege that the stray remarks in question rose to the level of a hostile work environment.

Having evaluated the conclusory and amorphous contentions of Akop's complaint and summary judgment brief, the court concludes that Akop is prosecuting a discriminatory discharge claim based on his age and religion.   This holding conforms with the following summary assertion in Akop's brief: "The facts of this case establish with unusual clarity that [Akop] was discharged by [GGLI] as a result of age and religious discrimination. . . ." P. Br. 1. Moreover, in his brief Akop does not challenge GGLI's similar assumption that the adverse employment action of which he complains is his discharge.   Accordingly, the court will review the

allegations of his complaint and the "disputed facts" in his brief, including, *inter alia*, the stray remarks, the failure to allow him to take Yom Kippur as a paid holiday, and the conversion from a commission to a salary compensation scheme, in the context of claims for discriminatory discharge due to age and religion.

The court will assume *arguendo* that Akop has established a prima facie case of discrimination based on his termination. Because it is difficult to understand Akop's contentions, making this assumption will enable it to focus on more pertinent issues without the necessity of sorting through the litany of the "disputed facts," many of which are not related to or organized under the burden-shifting paradigm of *McDonnell Douglas*. Moreover, because Akop's burden at the prima facie case stage is significantly less than what he shoulders at the third step, it is likely that the court would reach the second and third steps anyway. *See, e.g., Khanna v. Park Place Motorcars of Houston, Ltd.,* 2000 WL 1801850, at *4 (N.D. Tex. Dec. 6, 2000) (Fitzwater, J.) (characterizing prima facie burden as "minimal").

D

Having assumed *arguendo* that Akop has made a prima facie showing, the court shifts to GGLI the burden of producing evidence of a legitimate, nondiscriminatory reason for discharging Akop. GGLI has adduced proof that it terminated Akop because there was no improvement in his pre-call planning process, no improvement in his

written presentation to customers, and a continuing hygiene problem. GGLI relies on evidence that it gave Akop three disciplinary warnings that pointed out problems with his attendance at pre-call planning meetings and performance concerning pre-call planning. It also cites evidence of several errors in price and misspellings in one of Akop's competitive price analyses that he intended to present to customers. GGLI also cites business records that recount the events of an October 15, 2003 meeting regarding Akop, which cite five complaints from customers and fellow employees regarding Akop's odor, and a telephone call from the management at Luna De Noche requesting that Akop be taken off the account due to his poor hygiene. GGLI has satisfied its burden of production by proffering evidence that it terminated Akop's employment because of factors that are legitimate for an employer to rely on in discharging an employee and that are unrelated to his age or religion.

E

Because GGLI has met its burden of production, Akop is obligated to introduce summary judgment evidence that would permit a reasonable trier of fact to find that GGLI's proffered reasons for terminating him are pretextual or that a discriminatory reason was also a motivating factor. *See Rachid*, 376 F.3d at 312. Akop can produce evidence that would enable a reasonable trier of fact to find that GGLI's "'proffered explanation is unworthy of

credence.'"  *Martin*, 2005 WL 2148651, at *5 (quoting *Burdine*, 450 U.S. at 256).  He can also introduce evidence that would enable a reasonable trier of fact to find that a discriminatory reason more likely motivated GGLI's decision to terminate him.  *See id.*

Despite Akop's failure to comply with Rule 56.5(c), *see supra* note 4, and his failure to identify evidence within the *McDonnell Douglas* framework, the court will review his lists of "disputed facts" and proffered evidence relating to pretext or mixed motives. *But see Bookman v. Shubzda*, 945 F. Supp. 999, 1004 (N.D. Tex 1996) (Fitzwater, J.) ("Rule 56 obligates the nonmovant to designate the specific facts in the record that create genuine issues precluding summary judgment.  It 'does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition.'") (quoting *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996)).

1

The court first examines the record for evidence that would permit a reasonable finding of pretext.  Concerning his failure to improve pre-call planning, Akop submits no evidence that discredits GGLI's account of his poor performance and tardiness regarding this aspect of his employment.  With respect to Akop's poor written presentation to customers, Akop posits that, because he earned some of GGLI's largest commissions, his customers "loved" him.  This evidence, even viewed favorably to Akop as the summary judgment

nonmovant, would not permit a reasonable trier of fact to find that GGLI's proffered reason for terminating him—that there was no improvement in his written presentation to customers—is pretextual. Akop also identifies several pre-call planning reports and contends that the ones he prepared are virtually indistinguishable from those of other salespersons. The reports on which he relies, however, were the type shown to management, not to customers. They also are not evidence of pretext concerning the reason on which GGLI relies. Akop has thus failed to produce evidence that would permit a reasonable trier of fact to find that GGLI's first two proffered reasons for discharging him are pretextual.

Regarding hygiene, Akop submits affidavits of former customers that state that he did not have a hygiene problem that "made him smell bad." *E.g.*, P. App. 96. He also cites an email in which Noebel removed him from the Luna de Noche account several months before someone at Luna de Noche allegedly requested that he be removed due to his poor hygiene. The court concludes that Akop's evidence regarding hygiene, assumed to be true, is sufficient to raise a genuine fact issue concerning this reason for terminating him.

Nevertheless, because Akop has failed to offer evidence that would permit the reasonable finding that GGLI's other proffered nondiscriminatory reasons for his discharge are pretextual, he has

not satisfied his burden at the third step of the burden-shifting paradigm.  Akop is required to "put forward evidence rebutting *each one* of a defendant's nondiscriminatory explanations for the employment decision at issue.  Thus, a plaintiff relying upon evidence of pretext to create a fact issue on discriminatory intent falters if he fails to produce evidence rebutting *all of* a defendant's proffered nondiscriminatory reasons." *Machinchick*, 398 F.3d at 351 (emphasis added); *see also Kwong v. Am. Flood Research, Inc.*, 132 Fed. Appx. 18, 21 (5th Cir. May 18, 2005) (per curiam) (unpublished opinion) (rejecting retaliation claim where plaintiffs failed to proffer evidence rejecting each of defendant's nondiscriminatory reasons).  The court therefore holds that Akop has not demonstrated that a reasonable trier of fact could find in his favor at the third stage based on pretext.

2

The court next considers whether Akop has produced proof that would enable a reasonable trier of fact to find that a discriminatory reason was the more likely one for GGLI's decision to terminate his employment.  "In a mixed-motive case involving an employment decision based on a 'mixture of legitimate and illegitimate motives,' the plaintiff need only prove that the illegitimate motive was a motivating factor in the decision." *Machinchick*, 398 F.3d at 355 (quoting *Rachid*, 376 F.3d at 310). Akop's subjective beliefs of discrimination, however, are

insufficient evidence of a discriminatory motive.  *See Martin*, 2005 WL 2148651, at *5.

In the face of evidence that Akop's performance had for several years fallen below that of other salespersons, the trier of fact would be required to find that Akop's performance was not the sole reason GGLI terminated his employment.  The evidentiary support for this inference would stem only from four isolated comments made during an employment tenure that exceeded four years, an allegedly discriminatory salary scheme that is unaccompanied by evidence that it impacted Akop differently or adversely due to his age or religion, and testimony and documents that fail to permit a reasonable finding of inconsistency in GGLI's articulated reasons for terminating Akop.  *See Machinchick*, 398 F.3d at 355 (considering plaintiff's evidence as a whole to determine whether discrimination was motivating factor in adverse employment decision).[8]

In the summary judgment context, for comments in the workplace to provide sufficient evidence of discrimination, they must have been related to Akop's age or religion, proximate in time to his termination, made by an individual with authority over his

---

[8]Although the court has held that the four comments cited are insufficient *direct* evidence of discrimination, *see supra* at § III, "the court still weighs these comments in making its determination regarding the sufficiency of the evidence relating to pretext." *Read v. BT Alex. Brown Inc.*, 2002 WL 22060, at *9 n.6 (N.D. Tex. Jan. 7, 2002) (Fitzwater, J.), *aff'd*, 72 Fed. Appx. 112, 119 (5th Cir. 2003) (unpublished opinion).

termination, and related to his termination. *See Read v. BT Alex. Brown Inc.*, 2002 WL 22060, at *4 (N.D. Tex. Jan. 7, 2002) (Fitzwater, J.), *aff'd*, 72 Fed. Appx. 112, 119 (5th Cir. 2003) (unpublished opinion). Mere stray remarks do not evidence an employer's discriminatory intent. *See EEOC v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996).

As discussed *supra* at § III, two of the remarks on which Akop relies were not temporally related to his discharge. *Cf. Richardson v. Monitronics Int'l, Inc.*, ___ F.3d ___, 2005 WL 3485872, at *5 (5th Cir. Dec. 21, 2005) (concluding in part that plaintiff submitted sufficient evidence that discrimination was motivating factor in termination where hostile remarks were coupled with temporal proximity to termination). The two remaining remarks—that Bill did not want "semi-retired personnel" at GGLI and that Noebel called Akop a "kike"—are insufficient evidence, without more, that GGLI possessed an age- or religion-based animus in terminating him. *Cf. Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 404 n.7 (5th Cir. 2001) (stray remarks insufficient circumstantial evidence of age discrimination where no other evidence of pretext). Moreover, Akop has failed to adduce evidence concerning when Noebel used the slur, much less any circumstances surrounding the remark, other than his affidavit testimony that Noebel said it. He has also failed to provide the court with the context of Bill's semi-retired comment, e.g, whether it was said to

Akop individually, or to a group of employees (of varying ages), or after an employee arrived late. In reviewing the summary judgment record as a whole, the court concludes that it would only reasonably permit the finding that the remarks were isolated incidents. They were made by different speakers, related to separate protected characteristics, and occurred sporadically over the four-year course of Akop's employment. And, in the face of evidence of GGLI's legitimate, nondiscriminatory performance-related reasons for terminating Akop, the four remarks, taken individually or collectively, are insufficient for a reasonable trier of fact to find that age or religion was an impermissible factor in the decision to terminate Akop. *See Desert Palace*, 539 U.S. at 101.

Furthermore, Akop has proffered no evidence that the salary scheme was age-related, either in its implementation or in its impact, as discussed *supra* at § IV(C). As such, it is not evidence that age was a motivating factor in Akop's termination, or even that age was a factor at all. Finally, the remaining testimony and documents, including, *inter alia*, evidence related to hygiene, is offered to rebut GGLI's proffered reasons for Akop's termination, but it is not additional evidence of a discriminatory motive by GGLI. *See Rachid*, 376 F.3d at 312 (mixed motives alternative assumes truth of employer's reasons for adverse employment action).

Because Akop has failed to introduce evidence that would

permit a reasonable finding that his age or religion was a motivating factor in GGLI's decision to terminate him, he has not met his burden at the third step. Accordingly, the court grants GGLI's motion for summary judgment on Akop's age discrimination claims under the ADEA and TCHRA and his religion discrimination claim under Title VII.

V

The court now considers whether GGLI is entitled to summary judgment dismissing Akop's retaliation claim.

As with discrimination claims, when the employee offers no direct evidence that the employer retaliated against him, the method of proof set out in *McDonnell Douglas* applies. *See Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *9 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.) (addressing Title VII retaliation context); *see also Patrick v. Ridge*, 394 F.3d 311, 315 n.10 (5th Cir. 2004) (applying *McDonnell Douglas* burden-shifting analysis to ADEA retaliation claim). Akop must first establish a prima facie case of retaliation. To do so, he must demonstrate that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action. *Walker*, 2005 WL 2278080, at *9. Concerning Akop's prima facie case, although he fails to label it as such, he proffers evidence that he filed a charge of discrimination in mid-September 2003 and was terminated

- 25 -

approximately ten weeks later.[9]  Without attempting to interpret his brief further, the court will assume *arguendo*, as with his discrimination claims, that he has met his prima facie burden.  The burden then shifts to GGLI to articulate a legitimate, nondiscriminatory reason for the allegedly retaliatory action taken.  GGLI's burden is one of production, not of proof.  If GGLI meets its production burden, "any presumption of retaliation drops from the case."  *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 755 (5th Cir. 2005) (internal quotation marks omitted).

The final evidentiary burden shifts to Akop to demonstrate that "the conduct protected by Title VII [or the ADEA] was a but for cause of the adverse employment decision."  *Walker*, 2005 WL 2278080, at *9 (internal quotations marks omitted).  Akop may satisfy this burden by adducing evidence that would permit a reasonable trier of fact to find that the "stated reason is actually a pretext for retaliation."  *Baker*, 430 F.3d at 755 (internal quotation marks omitted).  The court understands Akop to contend that he may alternatively withstand summary judgment at this stage by establishing that GGLI possessed mixed motives in

---

[9]Although his brief makes conclusory and amorphous allegations regarding "a continuous and concerted program of harassment" and "retaliatory harassment," *see* P. Br. 19-20, in his complaint Akop specifically identifies his discharge as the retaliatory act of which he complains.  *See* Compl. ¶ 6.02.

terminating him.  *See supra* § IV(B).[10]  Under the mixed motives analysis, he need only offer sufficient evidence to create a genuine issue of fact that GGLI's reason for terminating him, although true, was but one of the reasons for its conduct, another of which was retaliation.  *See Rachid*, 376 F.3d at 312.  Although the Fifth Circuit has declined to address the impact of *Desert Palace* and *Rachid* on Title VII and ADEA retaliation claimants, *see, e.g., Septimus v. University of Houston*, 399 F.3d 601, 607 n.7 (5th Cir. 2005), it has recently held that the modified *McDonnell Douglas* framework applies to retaliatory discharge claims under the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601-2654.  *See Richardson*, ___ F.3d ___, 2005 WL 3485872, at *4.  And some district courts in the Fifth Circuit have applied the modified *McDonnell Douglas* approach to retaliation claims under Title VII.  *See McCarthy v. Primedia Workplace Learning, L.P.*, 2005 WL 3428191, at *4 n.2 (N.D. Tex. Dec. 6, 2005) (Lynn, J.) (collecting cases).

The court need not conclusively resolve whether the modified *McDonnell Douglas* framework applies in the Title VII and ADEA retaliation context.  Assuming *arguendo* that it does, the court

---

[10]The court is construing Akop's brief quite liberally in determining that he has raised this contention.  The entirety of this argument is contained in one sentence.  Moreover, the sentence is equivocal——"See the discussion of the present state of discrimination law in Section IV of this Brief, which is applicable to retaliation claims also, although no proof of discrimination is required for a retaliation claim," P. Br. 22——and does not directly contend that the mixed motives analysis applies in the Title VII retaliation context.

also concludes that a reasonable trier of fact could not find retaliation based on the evidence Akop has adduced to show that GGLI's proffered reasons for terminating him were pretextual or that discrimination was a motivating factor in his discharge.  As discussed *supra* at § IV(E), Akop has failed to produce adequate controverting evidence of GGLI's motives for terminating him. Moreover, he relies on four points of "disputed facts" as evidence of retaliation.  First, he alleges that GGLI's "retaliatory harassment" commenced soon after he filed his February 2003 EEOC complaint.  This constitutes nothing more than Akop's subjective belief, which is insufficient evidence to withstand summary judgment. *See Lawrence*, 163 F.3d at 313 ("[A] subjective belief of discrimination, however genuine, [may not] be the basis of judicial relief.") (internal quotation marks omitted and second alteration in original).  Second, Akop points to the fact that GGLI converted to a salary scheme "only a few months" after he filed his February 2003 EEOC complaint.  As discussed *supra* at § IV(C), Akop has not explained how the salary scheme impacted him differently from other GGLI employees or that it adversely impacted him.  Indeed, the evidence indicates that his average bi-weekly pay actually increased between the six-month period before the conversion and the six-month period after it.  The conversion is thus insufficient evidence that would permit a reasonable finding of retaliation. Third, Akop posits that the temporal proximity between the swastika

incident and his EEOC charge evidences GGLI's retaliatory motive. Because Akop has adduced no evidence that GGLI or any of its employees was involved in the deplorable incident, as discussed *supra* at § III, it is also insufficient evidence of a retaliatory motive.  Fourth, Akop urges that the brief ten-week period between the filing of his September 2003 EEOC discrimination charge and his termination demonstrates a retaliatory motive.  Akop is unable, however, to buttress his reliance on temporal proximity with any evidence that would permit a reasonable finding of retaliation. This evidence, considered separately or together with Akop's other "disputed facts," is thus insufficient to support a reasonable finding of retaliatory animus.  *See McCarthy*, 2005 WL 3428191, at *4 & n.2 (concluding that temporal proximity between sexual harassment report and termination was insufficient to demonstrate pretext in context of Title VII retaliation claim and, alternatively, that plaintiff could not satisfy modified *McDonnell Douglas* burden).  Akop has thus failed to meet his burden of introducing evidence that creates a genuine issue of material fact regarding the ultimate question whether GGLI unlawfully retaliated against him.  Accordingly, GGLI's motion for summary judgment on Akop's retaliation claim is granted.[11]

---

[11]Because the court dismisses Akop's claims, it denies as moot GGLI's motion to strike Akop's appendix submitted in response to GGLI's motion for summary judgment.

VI

GGLI also requests the court to award it attorney's fees under Title VII. When a suit is brought in good faith, a successful defendant can be awarded fees "only upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.) (internal quotation marks omitted); *see Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 418 (1978). GGLI has not alleged—much less attempted to demonstrate—that Akop's action was brought in bad faith or that it is frivolous, unreasonable, or without foundation. GGLI's request for attorney's fees is thus denied.

\*     \*     \*

For the reasons explained above, the court grants GGLI's motion for summary judgment and dismisses this action with prejudice by judgment filed today.

**SO ORDERED.**

January 17, 2006.


_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 30 -